**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § § | |
| LAWRENCE J. WEDEKIND | § § | Case No. 09-32057-H4-11 |
| Debtor. | § § | (Chapter 11) |
| _____ | § § | |
| LAWRENCE J. WEDEKIND | § § | |
| Plaintiff, | § § | |
| | § | Adversary Proceeding No. _____ |
| vs. | § § | |
| UNITED STATES DEPARTMENT OF OF HEALTH & HUMAN SERVICES, | § § § | |
| Defendant. | § | |

**COMPLAINT FOR TURNOVER AND DECLARATORY JUDGMENT**

TO THE HONORABLE JEFF BOHM,
UNITED STATES BANKRUPTCY JUDGE:

**PARTIES**

1.       Plaintiff, LAWRENCE J. WEDEKIND, being the Debtor in the above referenced Chapter 11 Bankruptcy Case and, as the Plaintiff herein, files this Adversary Proceeding pursuant to 11 U.S.C. § 542(a) (the "Bankruptcy Code") and Rule 7001(1) & (9) of the Federal Rules of Bankruptcy Procedure.

2.       Defendant is the United States Department of Health & Human Services, an agency

or unit of the United States government (alternatively call the "Defendant" or "HHS"), and may be served with a Summons and a copy of this Complaint, pursuant to Rule 7004(b) (4) & (5) of the Federal Rules of Bankruptcy Procedure by serving the appropriate personnel named in that Rule.

3. The Defendant is deemed to have waived its sovereign immunity for purposes of this Complaint pursuant to 11 U.S.C. § 106 (a) (1).

## JURISDICTION

4. The United States District Court for the Southern District of Texas has jurisdiction over this Adversary Proceeding under 28 U.S.C. §1334, which action has been referred to this Court pursuant to 28 U.S.C. §157(a).

5. In addition, this Court may enter a final judgment against a governmental unit pursuant to 11 U.S.C. §§ 106 (a) (3).

## CORE PROCEEDING

4. The Plaintiff alleges that this matter is a core proceeding under 28 U.S.C. 157 (b) (2) (A) and (E) as it concerns a recovery of property of the Debtor's bankruptcy estate.

## VENUE

5. Venue in this Adversary Proceeding is properly before this Court pursuant to 28 U.S.C. §1409 (a).

## PROCEDURAL HISTORY

6. This proceeding relates to the Chapter 11 Reorganization Case of LAWRENCE J. WEDEKIND, the Plaintiff and Debtor in Case No. 09-32057-H4-11. The main Case, referenced above, was filed on March 31, 2009 and the Debtor is currently the Debtor-in-Possession therein.

## FACTS

7. The Plaintiff had previously managed the Dickerson Memorial Hospital in Jasper, Texas which commenced operations in the year 2000. The entity which owned the hospital was known as Dickerson Memorial Hospital, Ltd., a Texas limited partnership ("Dickerson"). The general partner of Dickerson is Greater Gulf Medical Alliance, Inc. a Texas corporation ("GGMA").

8. As a result of financial problems, including the non-payment of amounts claimed by Dickerson as being due from the Defendant, as well as other federal government agencies, Dickerson ceased operations during 2008. Its buildings and certain equipment were secured to OmniBank, N.A. which eventually foreclosed upon such in early 2009.

9. In September, 2005, Hurricane Rita tore through the East Texas area and Dickerson incurred damages and costs which were not totally insured and for which GGMA and its affiliates proceeded to fund through borrowed funds. As a result of the failure to receive promised government payments, Dickerson began to fall behind in the payment of federal employment taxes which, as of this date, are in excess of Two Million Dollars ($2,000,000), since both it and GGMA as well as certain affiliates devoted any available funds to keeping the hospital operating.

10. Dickerson previously filed a Chapter 11 Reorganization Proceeding in this Court under Case Number 08-33039-H3-11 on May 7, 2008 (the "Dickerson Case"), which was eventually dismissed on August 18, 2008 since the attempted reorganization was not feasible and a confirmable plan could not be obtained.

11. During the pendency of the Dickerson Case the Internal Revenue Service ("IRS")

filed a proof of claim for the unpaid employment taxes, in addition to a Trust Fund Penalty Claim which was also being pursued against Mr. Wedekind, the Plaintiff herein, individually.

12. As Dickerson was out of money and could not obtain a reorganization of its affairs, let alone fund protracted litigation with the IRS, Mr. Wedekind sought and obtained an assignment of Dickerson's claim for unpaid amounts due from the Defendant on March 9, 2009 (the "Assignment") in order to have standing to bring any action or claim against the Defendant in this or any other forum.

13. The Assignment is or may be subject to the lien of OmniBank, N.A. which is a creditor of both Dickerson and the Plaintiff herein and which Bank is still owed a deficiency on its claims – certain of which are guaranteed by other federal government agencies.

14. In substance, the Plaintiff is seeking recovery of amounts due Dickerson by one federal government agency in order to pay the claims of another federal government agency. Recovery of such amounts will substantially reduce or pay the debts of both the Debtor, as well as Dickerson.

15. This is a Complaint seeking various forms of relief in which the Debtor is authorized to seek this Court's assistance in obtaining possession of property pursuant to 11 U.S.C. §542(a) in addition to a Declaratory Judgment that Plaintiff's assignor is owed money by Defendant and that Plaintiff is entitled to collect and apply such.

## STATUTORY BASIS & CLAIM BACKGROUND

16. The underlying dispute surrounds the amount of Medicare reimbursement due Dickerson as a provider of medical services. The Medicare program was established to provide

health insurance to the aged and disabled. 42 U.S.C. §§ 1395-1395cc. The Centers for Medicare and Medicaid Services (CMS), formerly the Health Care Financing Administration (HCFA), is the operating component of the United States Department of Health and Human Services (HHS) which is charged with administering the Medicare program. CMS' payment and audit functions under the Medicare program are contracted out to insurance companies known as fiscal intermediaries. Fiscal intermediaries determine payment amounts due the providers under Medicare law and interpretive guidelines published by CMS. *See*, 42 U.S.C. § 1395h, 42 C.F.R. §§413.20(b) and 413.24(b).

17.    At the close of its fiscal year, a provider must submit a cost report to the fiscal intermediary showing the costs it incurred during the fiscal year and the portion of those costs to be allocated to Medicare. 42 C.F.R. §413.20. The fiscal intermediary reviews the cost report, determines the total amount of Medicare reimbursement due the provider and issues the provider a Notice of Program Reimbursement (NPR). 42 C.F.R. §405.1803. A provider dissatisfied with the intermediary's final determination of total reimbursement may file an appeal with the Provider Reimbursement Review Board (Board) within 180 days of the issuance of the NPR. 42 U.S.C. §1395oo(a); 42 C.F.R. §405.1835.

18.    When the Medicare program was first implemented, it paid for hospital services (inpatient and outpatient) based on hospital-specific reasonable costs attributable to serving Medicare beneficiaries. Section 42 U.S.C. § 1395x(v)(1)(A) of the Social Security Act (Act) provides, in part, that the reasonable cost of any service shall be the cost actually incurred, excluding any part of such costs found to be unnecessary in the efficient delivery of needed

health services.

19. Effective with cost reporting periods beginning on or after October 1, 1983, short-term, acute care hospitals became subject to Medicare's Prospective Payment System (PPS). Under this system, Medicare's payment for hospital inpatient Part A operating costs is made on prospectively determined rates and applied on a per discharge basis. Medicare discharges are classified into diagnostic related groups (DRG), and a hospital-specific payment rate is assigned to each DRG with respect to resource use or intensity. Hospital inpatient operating costs include general routine service costs, ancillary service costs, and intensive care-type unit service costs, but exclude certain other costs such as the costs of medical education training programs and organ acquisition expenses.

20. The Balanced Budget Act of 1997 (BBA), enacted on August 5, 1997, amended section 1833 of the Act by adding subsection (t), which provides for the implementation of a hospital outpatient PPS (OPPS) effective for services furnished on or after July 1,2000. Under OPPS, predetermined amounts are paid for designated services furnished to Medicare beneficiaries. These services are identified by codes established under the Healthcare Common Procedure Coding System (HCPCS).

21. On November 29, 1999, the Balanced Budget Refinement Act of 1999 (BBRA), P. L. 106-113, was enacted. Section 202 of the BBRA amended section 1833(t) of the Act by re-designating paragraphs (7) through (11) as paragraphs (8) through (12), and adding a new paragraph (7) which provides for a transitional adjustment to limit payment reductions under the hospital outpatient PPS, i.e., *Transitional Corridors* (also referred to as "Transitional Outpatient

Payments" or "TOPS"). In general, for the years 2000 through 2003, a provider will receive an adjustment if its payment-to-cost ratio for outpatient services furnished during the year is less than a set percentage of its payment-to-cost ratio for those services in its cost reporting period ending in 1996 (the base year).

22. CMS promulgated 42 C.F.R. §419ff to implement Medicare's hospital outpatient PPS. Section 419.70 of the regulations specifically implements the transitional adjustment payments enacted by the BBRA. 1n general, this regulation explains that a provider will receive a transitional adjustment when its OPPS payments are less than its pre-BBA amount.

23. Dickerson, prior to its closing, sought payment of these Corridor or "TOP" Payments for years 2001 through and including 2005 in the aggregate amount of $1,159,326.00. CMS adjusted said amount and offered to settle for a much smaller amount.

24. Dickerson refused to settle and, before it could appeal the CMS determination, ended up ceasing operations and closing its doors.

25. The Plaintiff obtained the assignment of Dickerson's Claim and cause of action against the Defendant and is asserting such herein to obtain funds rightfully due in order to use such for payment of other debts of both Dickerson and the Plaintiff which accrued as a result.

**FIRST CAUSE OF ACTION - TURNOVER**

26. The Plaintiff reincorporates all of the facts set forth in Paragraphs 7 through 25 above as applicable to this Cause of Action.

27. The Court should compel the Defendant to turn over the Corridor Payments to the

Plaintiff promptly pursuant to §542(a) of the Bankruptcy Code.

28.     In addition, the Defendant should also be compelled to pay interest on the funds being sought by this Complaint from the date such should have been paid until actually paid.

## SECOND CAUSE OF ACTION – DECLARATORY JUDGMENT

29.     The Plaintiff reincorporates all of the facts set forth in Paragraphs 7 through 25 above as applicable to this Cause of Action.

30.     The Plaintiff respectfully requests that this Honorable Court, upon hearing all of the facts and evidence to be presented herein, determine and declare that the Plaintiff is entitled to recover in the capacity in which he has brought this action as the Assignee of the Dickerson Claims; that the actual amount of these Claims be liquidated and determined by the Court; that the Defendant be compelled to pay interest thereon; and for such additional declarations which may be necessary during or following the trial hereof.

31.     The Plaintiff reserves the right to amend this Complaint pursuant to the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure as a result of additional evidence and facts which are expected to arise during discovery.

WHEREFORE, PREMISES CONSIDERED, LAWRENCE J. WEDEKIND, Plaintiff and Debtor, prays that the Court determine the actual amount owed by the Defendant on the Corridor or "TOP" Claims assigned to Plaintiff and that the Defendant be compelled to turn over the amount of funds so determined, including interest at the appropriate rate to be determined, to Plaintiff for use in his Chapter 11 Plan; for a necessary declaratory judgment related to all of the foregoing; and further,

for all other relief whether at law or in equity to which the Plaintiff may be justly entitled.

Dated:  June 30, 2009          Respectfully submitted:

                                                  CLARK & KEITER, P.C.

                                                  /s/ James R. Clark
                                                  James R. Clark
                                                  SBN 04286000
                                                  4545 Mt. Vernon
                                                  Houston, Texas 77006
                                                  (713) 529 -1300
                                                  (713) 532 - 5505    [FAX]

                                                  **ATTORNEY IN CHARGE FOR PLAINTIFF,**
                                                  **LAWRENCE J. WEDEKIND**