EXHIBIT "A"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| LAWRENCE J. WEDEKIND | § | Case No. 09-32057-H4-11 |
| | § | (Chapter 11) |
| Debtor. | § | |

## DEBTOR'S ORIGINAL PLAN OF REORGANIZATION

On March 31, 2009, LAWRENCE J. WEDEKIND, (hereinafter referred to as "Debtor"), commenced this case under the provisions of Chapter 11, Title 11 of the United States Code. On November 25, 2009 the Debtor filed his Original Disclosure Statement to his Original Plan of Reorganization dated November 25, 2009, pursuant to 11 U.S.C. § 1123.

## ARTICLE I

### Definitions

The following terms, when used in this Plan of Reorganization or the Original Disclosure Statement to such Plan filed also on November 25, 2009, and any subsequent amended versions thereof, shall, unless the context otherwise requires, have the following meanings:

1.01   "Allowed amount" means the amount of any allowed claim. The allowed amount of any allowed claim that is an unsecured claim shall not include interest accruing after the date this case was commenced.

1.02   "Allowed claim" means (i) a claim which has been allowed by a final order of the Court; (ii) a claim, proof of which was timely filed with the Clerk of the Court or scheduled as other

1

**EXHIBIT "A"**

than an unliquidated, disputed or contingent claim by the Debtor in its schedules and statement of financial affairs and with respect to which no objection to the allowance of such claim has been timely filed, or as to such claim, either an objection to the claim or an application to amend the schedules with respect to such claim has resulted in the allowance of a claim, in whole or in part, by final order of the Court; (iii) a right to payment from the property of the Debtor's estate for compensation or reimbursement approved by the Court.

1.03    "Chapter 11 case" means this bankruptcy case commenced by the filing of a voluntary petition under Chapter 11 of the Code on March 31, 2009, which is now pending in this Court and styled "In re:  LAWRENCE J. WEDEKIND, Debtor."

1.04    "Code" or "Bankruptcy Code" means the United States Bankruptcy Code as contained in Title 11 of the United States Code and any applicable amendments thereto.

1.05    "Confirmation date" means the date upon which an order confirming the Debtor's Original Plan or any subsequent Plan is signed by the Court.

1.06    "Court" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division.  "Court" also means the United States District Court for the Southern District of Texas, Houston, Division, with respect to any matter or proceeding referred to a judge of the United States Bankruptcy Court for the Southern District of Texas under the provisions of 28 U.S.C. § 157(a) and with respect to such matter or proceeding the order of reference has been withdrawn under subsection (d) of such section.

1.07    "Creditor" means an entity or person holding a claim as defined in 11 U.S.C. § 101(4).

**EXHIBIT "A"**

1.08   "Debtor" means LAWERNCE J. WEDEKIND, an individual.

1.09   "Disbursing Agent" means the person or entity appointed under the provisions of paragraph 5.03 of Article V of this Plan to perform the duties set forth in paragraph 5.04 of such Article.

1.10   "Disclosure Statement" means the statement required under the provisions of 11 U.S.C. § 1125 which accompanies the filing of the Plan and through which acceptances or rejections of the Plan may be solicited after approval of such statement is obtained from the Court.

1.11   "Effective Date" means May 1, 2010.

1.12   "Estate property" means all non-exempt property of the Debtor's estate as defined in 11 U.S.C. § 541.

1.13   "Final order" means an order or judgment the operation or effect of which has not been superseded nor stayed and which is no longer subject to appeal or review.

1.14   "Net Distributable Income" means the net amount of cash received by LAWRENCE J. WEDEKIND from his employer after payment of his personal living expenses and is estimated to be approximately $15,000 per month.

1.15   "Plan" means this specific plan of reorganization proposed under the provisions of Chapter 11 of the Code or any amendment thereto.

1.16   "Secured claim" means the allowed claim of any creditor of the Debtor who hold as security for repayment of such claim an enforceable lien, security interest or other encumbrance on specific property of the estate, to the extent of the value of such security as determined in accordance with 11 U.S.C. § 506.

**EXHIBIT "A"**

1.17   "Unsecured claim" means the allowed claim of any creditor of the Debtor for which the holder holds no security for the repayment thereof.

1.18   "Voluntary Plan Payments" means the payments to be made to fund the Debtor's Plan by the Debtor's principal, Lawrence J. Wedekind, from his own personal funds in order to pay the Dividends set forth herein.

## ARTICLE II

### Classification of Claims

2.01   **Class 1:**   Allowed claims that are determined to be expenses of administration under § 503(b) of the Code being specifically those of Debtor's attorney, Debtor's accountant and the United States Trustee estimated to be not more than a total of $47,000.00 in the aggregate. These claims will be paid, in full, less any retainers on the Effective Date of the Plan. The actual amount payable to Debtor's attorney and accountant will be finally determined by the Bankruptcy Court after an appropriate application by each has been filed. The source of funds to pay these claims will be from the Voluntary Plan Payments.

2.02   **Class 2**:   The filed tax claims of only the Internal Revenue Service ("IRS") comprise this Class. The Debtor is married but files separate federal income tax returns from his spouse and is, thus, responsible only for his own personal tax liability each year. He will continue to file timely federal income tax returns and will pay any actual post-petition amounts determined on a current basis as such become due. The Debtor owes no federal income taxes for any years preceding the date of filing of this Bankruptcy Case.

   (1) The Secured Claim of the IRS, which is for Trust Fund Recovery

4

**EXHIBIT "A"**

Penalties related to unpaid employment taxes, is overstated as the Debtor has amended his Bankruptcy Schedules to reflect the inability to claim the right to assigned asset claims of Dickerson Memorial Hospital, Ltd. "Dickerson," a Texas Limited Partnership (see the more detailed discussion about Dickerson elsewhere herein for additional information) which had been a Debtor is a separate Chapter 7 proceeding that has now been dismissed. These asset claims were recently evaluated in two Adversary Proceedings filed by the Debtor against agencies of the United States government and the end result was that such could not be advanced by this individual Debtor. The Adversary Proceedings were dismissed and those claims must be advanced by Dickerson. Accordingly, the Debtor contends that this claim of the IRS is mainly unsecured.

(2) The Debtor plans to object to this Claim as the Debtor does not have sufficient unencumbered assets to equal the amount claimed as secured by the IRS. Once determined, this Claim will not be impaired under the Plan since this claim, to the extent allowed, will be satisfied in full via equal monthly payments with interest. The secured claim of the Internal Revenue Service ("IRS") is secured by one or more filed federal tax liens and will be paid from the anticipated net future income of the Debtor. The IRS will retain its statutory liens and all of its rights until this claim is paid in full - including the right to charge interest at Three Percent (3%) simple interest per annum from the date of confirmation of the Debtor's Plan until paid. The final allowed claim will be fully paid over 120 months following the Petition Date with interest at Three Percent (3%) simple interest per annum. The Debtor intends to object to this claim as the IRS has claimed a value in excess of the equity in all of the Debtor's assets that could be subject to a lien. The total value of the Debtor's personal property assets, as listed on his amended Schedule B to his

5

**EXHIBIT "A"**

Bankruptcy Petition is now approximately $145,385.00 including the value of insurance policies (which may be secured to OmniBank) in the amount of approximately $93,000.00 and an exempt IRA of $12,000.00 as well as an educational custodian account of about $12,500.00. Thus the Debtor believes that the IRS claim can only be considered secured to the remainder of his personal property worth approximately $30,885.00,

    2.03  **Class 3:**  The holder of this claim in Class 3 is only the Internal Revenue Service for the priority portion of its tax claim which is also derived from unpaid federal employment taxes originally due from Dickerson but assessed against the Debtor under what is known as the "Trust Fund Recovery Penalty." Since Dickerson is no longer operating it will not be incurring any current or post-petition employment tax liabilities. Accordingly, this Claim can only reflect Dickerson's pre-petition employment taxes. The Debtor anticipates that some or all of the IRS' Class 2 Claim will be reclassified into this Class after the Debtor's objection to the IRS' Class 2 Claim is resolved. The eventual allowed amount will be paid over 60 months from the Petition Date with interest at Three Percent (3%) simple interest per annum commencing on the Effective Date of the Plan. The Debtor anticipates and assumes that Dickerson will collect on a claim it has against the United States Department of Health and Human Services for what is known as transitional corridor payments and against the United States Federal Emergency Management Agency ("FEMA") for claims attributable to housing people during Hurricane Rita in 2005. The amount to be collectible is $1,368,000.00 at a minimum plus interest to be claimed. The Debtor will request that he be given full credit by the IRS for payments and interest offsets which would result from crediting the amount these agencies should have paid when originally due. Accordingly, the

**EXHIBIT "A"**

Debtor, subject to the resolution of his Objection to the IRS claim which will be filed, estimates that he will only owe the IRS no more than $600,000.00.

2.04   **Class 4:**   The Debtor for administrative convenience has, arbitrarily, placed all general unsecured creditors holding claims valued or stated as $10,000.00 or less, in this Class. Each such creditor will receive the lesser of $2,000.00 or the actual amount of their claim, in a lump sum, in cash, and without interest within 60 days of the Effective Date of the Plan. Thereafter, they will receive no other payments from the Debtor.  The creditors listed in this Class will have the option to elect out of Class 4 and into Class 5 if they prefer to receive the Twelve Percent (12%) dividend on their claim, without interest, over the extended payment period of 120 months instead of the amount and period provided in Class 4. Once that election is made on the form of Ballot used for voting on the Debtor's Plan of Reorganization, it will be irrevocable.  The Debtor will not make any payments on claims which have been disputed and for which that creditor has not filed any proof of claim.

2.05   **Class 5**:   The filed Class 5 claims in excess of $2,282,492.86 are the only general unsecured claims. These are designated to be paid a Twelve Percent Dividend (12%) of their allowed claims, without interest, over a period of 120 months. The aggregate amount to be paid is, thus, approximately $273,899.14 over 120 months or $2,282.49 per month. The payments will commence on May 1, 2010. Each creditor will receive a pro rata payment of their claim over 120 months. The remaining claims in this Class will be allowed as scheduled by the Debtor or as filed by the respective creditors.   These creditors also have the option to join the Administrative Convenience Class (Class 4) by indicating such election on their ballot whereby they will only receive a maximum payment of $2,000.00 as described in Class 4.

7

EXHIBIT "A"

## ARTICLE III

### Treatment of Claims Not Impaired Under the Plan

Claims in Classes 1, 2 & 3 are not impaired under the Plan within the meaning of § 1124 of the Code.  Claims in this Class 1 will be paid in full, in cash, without interest, on the Effective Date of the Plan. The Class 2 Claims will be paid in full, to the extent of their allowed secured value, with interest at Three Percent (3%) per annum, once finally determined by the Bankruptcy Court. Such will be paid over 120 months or paid off in a lump sum. The Class 3 Claims, when allowed, will be paid over 60 months from the Petition Date also with interest at Three Percent (3%) per annum.

## ARTICLE IV

### A. Treatment of Claims Impaired Under the Plan

Only claims in Classes 4 & 5 are impaired under the Plan within the meaning of § 1124 of the Code.  A complete listing of all claims including those of which are <u>impaired</u> follows:

### B. Summary Table of All Classes of Creditors

| Class | Claimant | Amount | | Claim Status |
|---|---|---|---|---|
| | **Administrative Claims** | | | |
| 1 | United States Trustee | $2,000.00 | | Based on amounts disbursed |
| 1 | James R. Clark | $30,000.00 | (a) | Subject to fee application |
| 1 | Michael P. Jayson, CPA | <u>$15,000.00</u> | (a) | Subject to fee application |
| | **Subtotal Class 1 claims** | **$47,000.00** | | |
| | **Secured Claims** | | | |
| 2 | Internal Revenue Service | <u>$2,264,769.46</u> | | Objection to be filed |

8

**EXHIBIT "A"**

|   |   |   |   |
|---|---|---:|---|
|   | **Subtotal Class 2 claims** | **$2,264,769.46** |   |
|   | **Priority Claims** |   |   |
| 3 | Internal Revenue Service | <u>$34,056.03</u> | Allowed as filed |
|   | **Subtotal Class 3 claims** | **$34,056.03** |   |
|   | **Unsecured Administrative- Convenience Class** |   |   |
| 4 | American Express Centurion Bank | $8,848.11 | Allowed as filed |
| 4 | American Express Travel Related Services Co., Inc. | $1,824.84 | Allowed as filed |
| 4 | American Express Travel Related Services Co., Inc. | $380.64 | Allowed as filed |
| 4 | Omnibank, USA | <u>$940.05</u> | Allowed as filed |
|   | **Subtotal Class 4 claims** | **$11,93.64** |   |
|   | **Unsecured General Claims** |   |   |
| 5 | David Mosig | $33,333.35 | Possible Objection |
| 5 | John Tatum | $355,211.11 | Allowed as filed |
| 5 | Omnibank, USA | $1,316,162.45 | Possible Objection |
| 5 | Omnibank, USA | <u>$577,785.95</u> | Possible Objection |
|   | **Subtotal Class 5 claims** | **$2,282,492.86** |   |

(a) Estimated

4.01   **Class 4:**   The Debtor for administrative convenience has, arbitrarily, placed all general unsecured creditors holding claims valued or stated as $10,000.00 or less, in this Class. Each such creditor will receive the lesser of $2,000.00 or the actual amount of their claim, in a lump sum, in cash, and without interest within 60 days of the Effective Date of the Plan. Thereafter, they will

9

**EXHIBIT "A"**

receive no other payments from the Debtor. The creditors listed in this Class will have the option to elect out of Class 4 and into Class 5 if they prefer to receive the Twelve Percent (12%) dividend on their claim, without interest, over the extended payment period of 120 months instead of the amount and period provided in Class 4. Once that election is made on the form of Ballot used for voting on the Debtor's Plan of Reorganization, it will be irrevocable. The Debtor will not make any payments on claims which have been disputed and for which that creditor has not filed any proof of claim.

4.02 **Class 5**: The filed Class 5 claims in excess of $2,282,492.86 are the only general unsecured claims. These are designated to be paid a Twelve Percent Dividend (12%) of their allowed claims, without interest, over a period of 120 months. The aggregate amount to be paid is, thus, approximately $273,899.14 over 120 months or $2,282.49 per month. The payments will commence on May 1, 2010. Each creditor will receive a pro rata payment of their claim over 120 months. The remaining claims in this Class will be allowed as scheduled by the Debtor or as filed by the respective creditors. These creditors also have the option to join the Administrative Convenience Class (Class 4) by indicating such election on their ballot whereby they will only receive a maximum payment of $2,000.00 as described in Class 4.

## ARTICLE V

### Execution and Implementation of the Plan

5.01 Sources of Funds. There is only one primary source of funds for the payment of the claims of creditors: the Net Distributable Income from the Debtor's employment as well as the possible sale or liquidation of his personal non-exempt property.

5.02 **Disbursement of Payments.** All payments to be made by the Debtor under this

**EXHIBIT "A"**

Plan to the holders of all classes of claims shall be made by the Disbursing Agent from funds provided as set forth in Article V of the Plan.

    5.03  **Disbursing Agent.**  The Disbursing Agent shall be the Debtor's accountant, Mr. Michael P. Jayson, CPA.

    5.04  **Disbursing Agent's Duties**.  The Disbursing Agent shall, on account of claims of such creditors, deposit such funds in a non-interest bearing account in a banking institution approved for deposit of funds held in the Registry of the United States District Court for the Southern District of Texas or as approved by the Office of the United States Trustee for said District. Thereafter, the Disbursing Agent shall disburse to creditors of the Debtor in accordance with this Plan, and with the order confirming the Plan, all distributions in partial or complete satisfaction of each creditors' claims.

    5.05  **Costs of the Disbursing Agent.**  All costs, expenses and obligations incurred by the Disbursing Agent in discharging the duties hereinabove described or in any manner connected, incidental or related thereto, shall be a charge only against the funds which may be subject to his control.  The Disbursing Agent shall have authority to employ one or more attorneys, accountants, or other professionals, as he deems necessary to assist him in the performance of the duties described in paragraph 5.04 hereof and the cost to the Disbursing Agent for the services of such attorneys, accountants or other professionals shall only be recoverable hereunder from the Debtor directly and not from the funds deposited for creditors.

    5.06  **Compensation of the Disbursing Agent.**  The Disbursing Agent shall receive an initial set–up fee of $500.00 from the Debtor as compensation for setting up the payment procedures

11

and $200.00 per month thereafter for performing his duties set forth above.

      5.07    **Post-Confirmation Default by Debtor.**  Upon the entry of a final order confirming this Plan, the creditors of the Debtor holding secured claims of any class shall be authorized to employ any applicable non-bankruptcy remedy against such property of the estate of the Debtor which secures the payment of such claims without further order of the Court, upon the Debtor's default in the payment of such claim as provided in this Plan or upon the Debtor's default in the performance of any non-monetary duty imposed on the Debtor under the terms of any mortgage, deed of trust, security agreement, promissory note or other instrument providing for such duties, provided as follows:

      (A)    The holder of such claim shall provide written notice of such default to the Debtor, the Debtor's counsel and the Disbursing Agent; and

      (B)    Advise the Debtor in the written notice provided for in the above and foregoing paragraph (A) of this paragraph 5.07 that the Debtor shall have thirty (30) days to cure such default and the consequences of the Debtor's failure to do so.

    Nothing contained in this paragraph 5.07 shall, in any way, alter the legal, equitable or contractual rights of any creditor of the Debtor whose claim is unimpaired under this Plan.  To the extent that anything contained in this paragraph conflicts with any statute, ordinance, regulation, decision, rule of law or contractual provision which provides for the legal, equitable, or contractual rights of such unimpaired creditors, then such statute, ordinance, regulation, decision, rule of law or contractual provision shall control.

      5.08    Insurance.  The Debtor will continue to maintain life insurance on himself and casualty insurance on his property.

EXHIBIT "A"

## ARTICLE VI

### Provisions for Rejection of Executory Contracts

6.01   Any and all executory contracts and unexpired leases of the Debtor which have not been either rejected or assumed by the Debtor prior to the Effective Date of the Plan shall be deemed assumed upon confirmation of this Plan.

## ARTICLE VII

### Objections to Claims

7.01   **Objections.**  As authorized by § 502 of the Code, the Debtor or any party-in-interest may file and prosecute objections to the allowance of the taxing authorities claim for which it is determined that such an objection is warranted, including objections based upon the claimant having received a transfer avoidable under the Code, and actions to recover transfers avoidable under §§ 544(a), 547, 548 and 550 of the Code.  All objections shall be filed prior to the Effective Date of the Plan or as may be otherwise permitted by the Court.  The Court may extend the time for filing objections before the expiration of the time provided for herein for doing so upon Motion of the Debtor or party-in-interest.  If no objection is timely filed to the allowance of any claim, such claim shall be deemed allowed in the amount in which it is filed or scheduled.

7.02   **Payment of Disputed Claim Upon Allowance**.  Payments and distributions to each holder of a claim, who or which has filed a proof of claim, and to which an objection has been filed which ultimately becomes an Allowed Claim shall be made in accordance with the provisions of the Plan with respect to the classes of creditors to which the holder of such Allowed Claim belongs. Such payments and distributions shall be made as soon as practical.  Payments made in accordance

**EXHIBIT "A"**

with this paragraph shall include interest realized by the Disbursing Agent on the amount of such payment from the date on which the holder of the Allowed Claim would have been entitled to receive the distribution.

## ARTICLE VIII

### Modification of the Plan

8.01   The Debtor may propose amendments or modifications of this Plan at any time prior to confirmation, without leave of the Court.  After confirmation, the Debtor may, with approval of the Court, and so long as it does not materially or adversely affect the interests of creditors, or reconcile any inconsistencies in the Plan, or in the order of confirmation, make such changes or modifications in such manner as may be necessary to carry out the purposes and effect of this Plan.

8.02   The Debtor will provide all creditors with his final report when it moves to close the case.

## ARTICLE IX

### Jurisdiction of the Court

9.01   The Court will retain jurisdiction until this Plan has been fully consummated, including but not limited to, the following purposes:

>   (A)   The classification of the claim of any creditor and the re-examination of claims which have been allowed for purposes of voting, and the determination of such objections as may be filed to any creditor's claim.  The failure by the Debtor to object to, or to examine any claim for the purpose of voting, shall not be deemed to be a waiver of the Debtor's right to object to or

**EXHIBIT "A"**

to re-examine the claim in whole or in part.

(B) Determination of all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes, or conflicts, whether or not subject to an action pending as of the confirmation date, between the Debtor and any other party, including but not limited to, any right of the Debtor to recover assets pursuant to the provisions of Title 11 of the Code.

(C) The correction of any defect, the curing of any omission or the reconciliation of any inconsistency in this Plan or the order of confirmation as may be necessary to carry out the purposes and intent of this Plan.

(D) The modification of this Plan after confirmation pursuant to the Code and Bankruptcy Rules.

(E) To enforce and interpret the terms and conditions of this Plan or any amended Plan.

(F) Entry of any order, including injunctions, necessary to enforce the title, rights and powers of the Debtor and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as this Court may deem necessary.

(G) Entry of an order concluding and terminating this case.

(H) Any litigation or judicial determination related to Paragraphs (A) through (G) above.

15

**EXHIBIT "A"**

(I)     Such orders or directives as may be necessary to sell the Debtor's assets or property free and clear of all liens and claims.

## ARTICLE X

### Effect of Confirmation

10.01   The effect of an order of the Court confirming the Plan shall be as is set forth in § 1141 of the Bankruptcy Code.

10.02   Additionally, no creditor whose claim is dealt with by this Plan, when confirmed, shall have any right to pursue or continue any litigation against the Debtor, once the Order of Confirmation is entered. The rights given under this Plan are in satisfaction of all claims and interests.

10.03   The Debtor shall timely pay post-confirmation quarterly fees to the Office of the United States Trustee assessed pursuant to 28 U.S.C. § 1930(a)(6) until such time as this Bankruptcy Court enters a final decree closing this Chapter 11 case, or enters an order either converting this case to a case under Chapter 7 or dismissing this case. After confirmation, the Debtor will file with this Bankruptcy Court and serve on the United States Trustee a financial report for each month, or portion thereof, that this Chapter 11 case remains open in a format prescribed by the United States Trustee. The order confirming the Debtor's Plan of Reorganization shall also contain the foregoing language set forth in the preceding paragraph.

**EXHIBIT "A"**

DATED:  November 25, 2009        Debtor:

LAWRENCE J. WEDEKIND


By: /s/ Lawrence J. Wedekind
         LAWRENCE J. WEDEKIND



**JAMES R. CLARK & ASSOCIATES, P.C.**

BY:  /s/ James R. Clark
        James R. Clark
        SBN 04286000
        4545 Mt. Vernon
        Houston, Texas 77006
        (713) 532-1300
        (713) 532-5505 [FAX]

**ATTORNEY IN CHARGE FOR DEBTOR,
AND DEBTOR-IN-POSSESSION,
LAWRENCE J. WEDEKIND**

17